THE MATHEWS LAW GROUP
CHARLES T. MATHEWS (SBN 55889)
GEORGE S. AZADIAN (SBN 253342)
ZACK I. DOMB (SBN 265185)
37 E. Huntington Drive, Suite A
Arcadia, California 91006
Ph.:     (626) 683-8291
Fax:     (626) 683-8295
Email: George@mathewslawgroup.com

Attorneys for Plaintiffs
BRIAN CONNELLY, KEITH MERRITT, and the Proposed Classes

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CONNELLY, MARY ALICIA SIKES, and KEITH MERRITT on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HILTON GRAND VACATIONS COMPANY, LLC<br><br>Defendant. | CASE NO.  12-cv-0599-JLS-KSC<br><br>(CLASS ACTION)<br><br>[Honorable Janis L. Sammartino]<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

I.    INTRODUCTION AND SUMMARY OF COMMON PROOF ..................................... 1

II.   STATEMENT OF FACTS.................................................................................. 2

      A.  Procedural History ............................................................................. 2

      B.  Factual Allegations Of Plaintiffs' Complaint ................................... 2

      C.  Class Definitions.................................................................................. 4

      D.  Important Facts Learned During Class Discovery ............................ 5

            1.  Hilton's Common Practice Regarding Using The Same Automatic Telephone Dialing System —The Liberation 6000 Dialer— To Make All Of The Telemarketing Calls At Issue ................................................................. 7

            2.  Hilton's Common Practice Relating To Unsuccessfully Attempting To Obtain "Prior Express Consent" From Members Of The Classes ...................... 8

III.  LEGAL ARGUMENT .................................................................................... 11

      A.  Legal Standard .................................................................................. 11

      B.  All Rule 23(a) Requirements Are Satisfied. ..................................... 12

            1.  Numerosity ............................................................................... 12

            2.  Commonality ............................................................................ 13

            3.  Typicality .................................................................................. 17

            4.  Adequacy .................................................................................. 19

      C.  Rule 23(b) Is Also Satisfied. ............................................................ 20

            1.  Certification Under Rule 23(b)(2) Is Clearly Appropriate. ................................. 20

            2.  Plaintiffs Have Also Satisfied Rule 23(b)(3). ......................... 22

                  a.  Common Questions Predominate Over Any Individual Issues. ................... 22

                  b.  A Class Action Is Superior To Over A Million Individual Actions For The Exact Same Claims. ........................................ 23

IV.   CONCLUSION ............................................................................................ 24

-i-

TABLE OF CONTENTS

(12-cv-0599)

**Federal Cases**

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) .................................... 15, 24

*Amone v. Aveiro*, 226 F.R.D. 677 (D. Haw. 2005).......................................................... 12

*Bellows v. NCO Fin. Sys., Inc.*, No. 07-cv-01413(W), 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .............................................................................................................. 24

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................... 11, 13

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004)......................................................... 12

*Connelly v. Hilton Grand Vacations Co., LLC*, 12-cv-599(JLS), 2012 WL 2129364 (S.D. Cal. June 11, 2012) ......................................................................................... 10, 14

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................ 12

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011)........................................... 21

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ................................. 11

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977).................................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................... 11

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ..................................... 12

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)......................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................... 13, 18, 19, 22

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................... 11, 18

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988).......................... 12

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652 (S.D. Cal. 2010)........... 12, 22

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ............. 22

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007)................................ 17, 23, 24

*Lee v. Stonebridge Life Ins. Co.*, 11-cv-0043(RS), 2013 WL 542854 (N.D. Cal. Feb. 12, 2013) ................................................................................................. 15, 17

*Leyva v. Buley*, 125 F.R.D. 512 (E.D. Wash. 1989) ................................................ 21

*Lo v. Oxnard European Motors, LLC*, 11-cv-1009(JLS), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011)................................................................................. 18, 23

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 11-cv-61357(SCOLA), 2013 WL 1283881 (S.D. Fla. Mar. 26, 2013) ........................................................................ 16, 23

*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012)..... 1, 13, 15, 20, 23

-ii-

TABLE OF AUTHORITIES

Miller v. Mackey Int'l., 452 F.2d 424 (5th Cir. 1971)................................................................. 11

Mitchem v. Illinois Collection Serv., Inc., 271 F.R.D. 617 (N.D. Ill. 2011) ......................... 17, 23

Probe v. State Teachers' Retirement Sys., 780 F.2d 776 (9th Cir. 1986)..................................... 21

Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639 (6th Cir. 2006) ........................................ 12

Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474 (E.D. Cal. 2006) ................................ 22

Ruiz v. Affinity Logistics Corp., 05-cv-2125(JLS), 2009 WL 648973 (S.D. Cal. Jan. 29, 2009) ............................................................................................................................................ 11

Satterfield v. Simon & Schuster, Inc., 569 F.3d at 946 (9th Cir. 2009) ...................... 2, 10, 14, 15

Schwartz v. Harp, 108 F.R.D. 279 (C.D. Cal. 1985) ................................................................... 18

Siding & Insulation Co. v. Beachwood Hair Clinic, Inc., 279 F.R.D. 442 (N.D. Ohio 2012) .................................................................................................................... 17, 23

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003) .................................................................... 11

Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996) ............................................... 22

Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th Cir. 2009) .................................... 22

Walters v. Reno, 145 F.3d 1032 (9th Cir. 1998)......................................................................... 20

W. States Wholesale, Inc. v. Synthetic Indus., Inc., 206 F.R.D. 271 (C.D. Cal. 2002)............... 11

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001)............................. 21, 22, 24

**Federal Statutes**

Federal Rule of Civil Procedure 23 ..................................................................................... *passim*

47 U.S.C. § 227.................................................................................................................... *passim*

**Other Authorities**

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003) ........................................... 14

TABLE OF AUTHORITIES

(12-cv-0599)

## I.    INTRODUCTION AND SUMMARY OF COMMON PROOF

Plaintiffs Brian Connelly and Keith Merritt ("Plaintiffs") respectfully move this Court for an Order:  (i) certifying this action as a class action for injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) and for monetary relief pursuant to Rule 23(b)(3); (ii) appointing Plaintiffs as representatives of the classes; and (iii) approving The Mathews Law Group as class counsel.

The instant action seeks injunctive relief and statutory damages arising out of the violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") by Defendant Hilton Grand Vacations Company, LLC ("Hilton").  More specifically, Plaintiffs have alleged that Hilton has violated the TCPA by placing telemarketing calls to their cell phones through use of an "automatic telephone dialing system."  "The three elements of a TCPA claim are:  (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012).  Each of these elements is easily proven by common issues of fact and law.

Discovery has revealed that Hilton has placed 37,532,395 telemarketing calls to members of the class during the statutory period of March 9, 2008 to the present.  These calls were placed to at least 6,598,046 persons' cell phones.  Indicative that Hilton had no consent to place these annoying calls, during this same period, 1,036,812 people demanded that Hilton remove their cell phone numbers from Hilton's marketing list!  Despite these large number of calls, as detailed below, *Hilton places every call using the exact same equipment (the Liberation 6000 Dialer) and contends that it obtains "prior express consent" for these telemarketing calls in only one of two ways*.  Thus, for the reasons set forth below, class certification should be granted to the proposed classes.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

(12-cv-0599)

## II.  STATEMENT OF FACTS

**A.  Procedural History**

Plaintiffs' Class Action Complaint was filed on March 9, 2012.  (Dkt. No. 1.)  On April 2, 2012, Hilton filed a Motion To Dismiss Plaintiffs' Complaint, Or, In The Alternative For Summary Judgment.  (Dkt. No. 6.)  After briefing by the parties, on June 11, 2012, this Court issued an Order denying Hilton's Motion To Dismiss Plaintiffs' Complaint, Or, In The Alternative For Summary Judgment in its entirety.  (Dkt. No. 17.)  Thereafter, Hilton filed an Answer (Dkt. No. 18) and the parties have engaged in written discovery and depositions.  Pursuant to this Court's Scheduling Order, class discovery was completed by the parties on April 30, 2013 and Plaintiffs' Motion for Class Certification is due on or before May 31, 2013.  (Dkt. No. 33.)

**B.  Factual Allegations Of Plaintiffs' Complaint**

The facts of this case are straightforward.  Plaintiffs have each received numerous telemarketing calls from Hilton on their cellular phones promoting timeshare vacations or hotel accommodations.  (Compl. ¶¶ 9-11, 14.)  During these calls, Hilton used an "automatic telephone dialing system" as prohibited by 47 U.S.C. § 227(b)(1)(A).  (Id. ¶ 13.)  The calls had a delay prior to a live person speaking to Plaintiffs or did not even transfer to a live person (resulting in silence on the other end of the phone), indicating that Hilton placed the calls using an "automatic telephone dialing system."  (Id.)  Moreover, on information and belief and investigation of counsel, the equipment used by Hilton to place such calls had the ***capacity*** to store or produce telephone numbers and to dial such numbers without any human intervention.  (Id.)

Plaintiffs did not provide "prior express consent" to receive the calls on their cellular telephones as set forth in 47 U.S.C. § 227(b)(1)(A).  (Id. ¶ 15.)  Express consent is "[c]onsent that is clearly and unmistakably stated."[1]  Plaintiffs never consented to receive calls from Hilton.  (Id.)

---

[1] Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

(12-cv-0599)

1         Based on these allegations, Plaintiffs allege violations of the TCPA, which prohibits the

2 use of an "automatic telephone dialing system" to place calls to any telephone number assigned

3 to a cellular telephone service absent an emergency purpose or the "prior express consent" of the

4 called party.  47 U.S.C. § 227(b)(1)(A)(iii).

5         Plaintiffs are not the only individuals fed up with these annoying telemarketing calls.

6 (See id. ¶ 20.)  Indeed, the Internet is replete with discussions between numerous members of the

7 classes — all desperate to end Hilton's unsolicited calls.[2]  (Id.)  For example, the following

8 Internet complaints are specifically alleged in the Complaint:

9     Jim
    4 Apr 2007

10     Extremely rude and aggressive Hilton employee called me on my cell phone trying to
    sell me a Vegas vacation and time share.  I called Hilton and had them take me off

11     their solicitation list.

12     http://800notes.com/Phone.aspx/1-702-616-7394

13     Tracker
    6 Apr 2009

14     Repeated calls to my work mobile number over the last 2 weeks.  This is disturbing to

15     me as a Hilton Gold member since I already specifically requested TWICE to be on
    their Hilton Grand Vacations Do Not Call list, and Hilton confirmed it...and then

16     chose to reverse my request.  A while back, they were calling me from FL number
    407-532-3791.  In May 2008, it was from 407-722-3532.  Now, the calls are coming

17     from this new Las Vegas area number.

18     http://800notes.com/Phone.aspx/1-702-616-7396/22

19     Dallas
    11 Feb 2009

20     Receiving multiple calls daily!  Finally, answered today only to receive silence.  Call

21     702-616-7396 and received a Hilton Grand Vacations message allowing me to press 2
    to remove my phone number from the list.  Courteous individual took my call, asked

22     for my phone number, and provided me with a confirmation #.  Said it would take up
    to 72 hours to removed and apologized.  When asked why there was silence on the

23     phone today, he honestly stated that the calls are computer generated and, at times,

24 [2] See Germain v. J.C. Penney Co., 09-cv-2847(CAS), 2009 WL 1971336, at *8 (C.D. Cal. July 6,
2009) (denying defendant's motion to strike Internet postings and rejecting arguments that the

25 posting were "unduly prejudicial and are not attributed to any specific author or source" because
the Internet postings provided "factual support for Plaintiffs' contention that numerous other

26 consumers suffered from similar actionable wrongdoing."); see also Ironforge.com v. Paychex,
Inc., 747 F. Supp. 2d 384, 405 (W.D.N.Y. 2010) (denying "[defendant's] motion to strike

27 allegations in the complaint concerning complaints about [defendant] that various people
(sometimes anonymously) posted about [defendant] on the internet.").

28 -3-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

(12-cv-0599)

when one answers, it may not go through to an agent. I do have a Hilton Honors accounts so perhaps this is why they have my number.
http://800notes.com/Phone.aspx/1-702-616-7396/21

Terence
9 Aug 2010
Called on my cell phone, kept asking me to buy vacations. very persistent, won't take no for an answer. Reported to National do not call register
http://800notes.com/Phone.aspx/1-702-699-7924

RTC
26 Aug 2010
Missed several calls on my cell from this number while on vacation, never left a message. Finally picked up today while driving home. Very persistent telemarketer offering "free trip to Vegas."
http://800notes.com/Phone.aspx/1-702-699-7924/2

M&T
20 Jan 2011
I just received a call on my cell phone. They are from Hilton Hotels trying to sell a package vacation to stay in Las Vegas. Basically trying to push a timeshare.
http://800notes.com/Phone.aspx/1-702-699-7929/5

(Id.)

**C.     Class Definitions**

Plaintiffs' Complaint set forth the following class definition:

### The "Class"

All persons within the United States to whom Hilton Grand Vacations has placed a call to said persons' cellular telephone (without their prior express consent and not for emergency purposes) through the use of an automatic telephone dialing system, within the four years prior to the filing of this Complaint.

(Id. ¶ 17.)

Based on facts learned during discovery, Plaintiffs also seek certification of the following two subclasses:

### The "HHonors Subclass"

All persons within the United States to whom Hilton Grand Vacations has placed a call to said persons' cellular telephone through the use of the Liberation 6000 Dialer, within the four years prior to the filing of Plaintiffs' Complaint where Hilton contends that it obtained "prior express consent" for said calls through the persons' enrollment in the HHonors Program.

-4-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(12-cv-0599)

**The "Reservation/Check-In Subclass"**

All persons within the United States to whom Hilton Grand Vacations has placed a call to said persons' cellular telephone through the use of Liberation 6000 Dialer, within the four years prior to the filing of Plaintiffs' Complaint where Hilton contends that it obtained "prior express consent" for said calls through the persons' providing the cellular telephone number at the time of reservation or check-in at Hilton-affiliated hotel/property.

The Class, HHonors Subclass, and Reservation/Check-In Subclass are collectively referred to herein as the "Classes."

**D.   Important Facts Learned During Class Discovery**

Discovery has revealed that Hilton has placed **_37,532,395 telemarketing calls_** to members of the Classes during the statutory period of March 9, 2008 to the present.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 7 (attached as Exhibit 1 to the Declaration of George S. Azadian, Esq. ("Azadian Decl.").)  These calls were placed to at least **_6,598,046 persons' cell phones_**.  (Hilton's Responses To Plaintiff Brian Connelly's Special Interrogatories (Set Two), Response No. 12 (attached as Exhibit 2 to Azadian Decl.).)  Indicative that Hilton had no consent to place these annoying calls, during this same period, **_1,036,812 people demanded that Hilton remove their cell phone numbers_** from Hilton's marketing list!  (Hilton's Responses To Plaintiff Brian Connelly's Special Interrogatories (Set Two), Response No. 17.)  Indeed, in discovery, Hilton has produced nearly **_4,000 pages of complaints_** made by consumers who are completely fed up with Hilton's telemarketing calls.  (Azadian Decl. ¶ 3 (HGV 1456-5382).)  These complaints tell a common story of consumers being called on their cell phones without their consent after staying at a Hilton-affiliated hotel or enrolling in the HHonors program.  For example:

> The guest called re: states that she **_stayed at an Embassy suites a few weeks ago. she states that she provided her cell number to the hotel and for booking_** but does not want to be contacted. she states that she has never stayed at the HHonors program. she states that she does not want to be contacted in no shape or fashion.

(HGV 1513 (emphasis added) (each of the cited complaints are attached in numerical order as Exhibit 3 to Azadian Decl.).)

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*My husband and I **recently stayed in an Embassy suites. we used one of our cell phones as our contact information. we then were very unpleasantly surprised to get a spam related call for Hilton vacations**. This costs us time/minutes that we pay for each month. This is highly unacceptable and we will contemplate no longer staying at any Hilton related properties as a result of this business practice.*

(HGV 1537 (emphasis added).)

***I did not sign up for your HHonors program to receive unwanted sales calls, especially to my cell phone*** where my minutes are not infinite. To that end, please remove my number from any internal or external marketing lists- I do not give consent for Hilton or any affiliated 3rd party to contact me for any promotional reason. The only reason Hilton should contact me is in regards to a reservation that I have booked.

(HGV 1569 (emphasis added).)

This spring, I have started receiving numerous telephone calls on my cell phone (I am registered with "do not call.") from Hilton Vacations. (To sell me a timeshare or vacation package, etc.) No messages are left when I do not answer any of these telemarketing calls. I understand via research I have done that it must be Hilton company policy to "farm" these phone numbers from Hilton subsidiary hotels in order to offer additional services. ***I just wanted you to know that though we really enjoyed our stay at your hotel, that we gave you our cell phone number so that we could be contacted if there was a problem/change with our reservation, not so it could be used as a telemarketing contact.***

(HGV 1572 (emphasis added).)

Hilton keeps calling my cell phone number about trying to sell me a Hilton Grand vacation Promotion package. ***I recently stayed at a Hilton Garden Inn and I guess Hilton has passed around my PERSONAL contact information to all of it's branches. I am furious that they have started "cold-calling" me on my cell number***, which is PRIVATE

(HGV 1715 (emphasis added).)

I receive calls on my cell phone from this number and wish it to stop. ***Just because I stay at Hilton hotels from time to time does not mean I consent to being harassed by telemarketers***. I am registered with national DO NOT CALL lists. MY personally paid for minutes are being STOLEN by these harassing calls.

(HGV 1868 (emphasis added).)

***When I stayed at your inn last Oct.08 I gave Hampton Inn my private cell phone number. I am certainly disappointed when Hilton used my private cell number to solicit an unwanted vacation*** offer today (2/11/09). Please stop using or giving out my cell phone number.

(HGV 2000 (emphasis added).)

***I stayed in a Hilton near Baltimore in Oct 2008. Tonight I receive a sales call from Hilton Grand vacations on my cell phone***.  What the hell is Hilton doing passing along my registration information and my cell phone number to a marketing division. I did not give Hilton the right to convey my number or information to anyone.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

(12-cv-0599)

(HGV 2194 (emphasis added).)

Hilton is really taking a cheap shot at your customers and guests. *I stay at Hampton Inns and give you my cell number on the reservation, and Hilton uses my personal information to telemarket me*. I would have thought better of Hilton.

(HGV 2290 (emphasis added).)

I have been **getting numerous cell phone calls** from 702-699-7928. This is from a telemarketer from Hilton Las Vegas. They call morning, noon, and night, at home and at work. Please have these calls stop immediately! **They must have gotten my number from the Hilton Honors program**.

(HGV 2518 (emphasis added).)

*[W]e recently stayed at a Hilton Gardens in Dallas and had an enjoyable weekend. However, since we have been back we have been subjected to your shock and awe phone campaign.* Every day we have received calls on our home phone and my husbands cell phone from the Hilton Resorts and some days we have been called twice.

(HGV 2770 (emphasis added).)  Unfortunately, the complaints go on and on . . . .

Despite these large number of calls, as detailed below, Hilton places every call using the exact same equipment (the Liberation 6000 Dialer) and contends that it obtains "prior express consent" for these telemarketing calls in only one of two ways.

1. **Hilton's Common Practice Regarding Using The Same Automatic Telephone Dialing System —The Liberation 6000 Dialer— To Make All Of The Telemarketing Calls At Issue**

Hilton admits that it used the exact same equipment to place each of the calls to the members of the Classes during the statutory period:  the "Liberation 6000 Dialer."  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 8.)  Hilton's Rule 30(b)(6) witness (John Allen) on the issue of the equipment used to place the calls to the members of the Classes admitted that:

Q. Okay. Now, at the bottom third -- half, it says, "Our call center uses Liberation as a dialer to connect our agents with our guests." Are you aware of any other system that you use other than the Liberation to connect your agents with your guests for outbound telemarketing purposes?

A. Not for telemarketing purposes, no.

(Deposition Of John Allen ("Allen Depo."), at 160:14-20 (all referenced deposition testimony from Mr. Allen's deposition is attached as Exhibit 4 to Azadian Decl.).)  As Mr. Allen further

-7-

testified:

> Q. Is the automated dialer part of the Liberation 6000?
> A. It is a piece of the Liberation 6000, yes.
> . . . .
> Q. So the automated dialer stores numbers a hundred at a time; correct?
> A. The automated dialer stores them a hundred at time, yes.
> Q. And that's -- the automatic dialer is part of the Liberation 6000?
> A. It is a subset of that system, yes.

(Allen Depo., at 102:1-17.)

> Q. So if you go to Page 4 of the automatic dialer [training manual for using the Liberation 6000 Dialer], it talks about different types of dialers, automatic dialer versus predictive dialer.  Does the Liberation 6000 have those capabilities?
> A. It does.

(Allen Depo., at 164:6-11.)

    Hilton's agents use a single training manual for using the Liberation 6000 Dialer.  (Allen Depo., at 146:5-147:18, Ex. 17 (Liberation Training Outbound Agent Guide Book) (attached as Exhibit 5 to Azadian Decl.).)  Mr. Allen also testified at length regarding the various software and hardware components of the Liberation 6000 Dialer.  (Allen Depo., at 184:21-190:7.)  Additionally, Mr. Allen testified that Hilton stores the numbers obtained through the HHonors Program or reservations/check-in into the database of numbers used by the Liberation 6000 Dialer.  (Allen Depo., at 43:8-25.)  Hilton also admits that all calls made through the Liberation 6000 Dialer utilized AT&T as the telephone service provider.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 10.)  Finally, Hilton admits all calls made using the Liberation 6000 Dialer were made through an identified list of 36 telephone numbers.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 9.)

### 2. **Hilton's Common Practice Relating To Unsuccessfully Attempting To Obtain "Prior Express Consent" From Members Of The Classes**

    Hilton contends that it obtains "prior express consent" for these telemarketing calls in only two ways (i.e., there are only two forms of supposed "prior express consent"):  (1) by obtaining the phone numbers at the time of making a reservation or checking into a Hilton-

-8-

affiliated hotel; or (2) through membership in the HHonors Program and the accompanying HHonors Terms and Conditions and the Hilton Global Privacy Policy.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 6.)  Indeed, Hilton's Rule 30(b)(6) witness on the issue of "prior express consent" (David Gust) testified:

> [Q:]  [Y]ou are here to represent the Defendant as a person most knowledgeable with regards to any consent Hilton contends that it had at any time between March 8, 2008 and the present, to place calls to persons' cell phones through an automatic telephone dialing system and prerecorded or artificial voice. Is that correct?
> THE WITNESS: That is correct.

(Deposition of David Gust ("Gust Depo."), at 29:1-12 (all referenced deposition testimony from Mr. Gust's deposition is attached to Azadian Decl. as Exhibit 6).)

> Q: So the two ways -- is it your contention that the two ways Hilton believes it obtains consent to call a guest's cell phone is, one, when the guest signs up for the HHonors program, and two, obtaining the phone number through a reservation or check-in?
> A. Yes.
> . . . .
> Q. We asked for all forms of consent.  You listed the two ways of consent that you believe Hilton receives from its customers, the two ways being signing up for the HHonors program, and two, obtaining the phone number through reservations or check-in.
> A. Yes, those are the two -- those are the two methods.
> Q. Of consent?
> A. Yes.

(Gust Depo., at 93:12-94:7.)

As for HHonors members (including Plaintiff Connelly), Hilton contends that it obtained "prior express consent" when the person enrolled in the HHonors Program through either a paper enrollment form or an online enrollment form.  (Gust Depo., at 123:6-129:24, 134:1-135:7, Ex. 9 (paper application) (attached as Exhibit 7 to Azadian Decl.), & Ex. 10 (online application) (attached as Exhibit 8 to Azadian Decl.).)  Both of these enrollment forms reference the HHonors Terms and Conditions and the Hilton Global Privacy Policy.  (Id.)  Hilton erroneously claims that it is through the HHonors Terms and Conditions and the Hilton Global Privacy Policy that "prior express consent" is obtained for the calls at issue.  (Hilton's Second Amended Response

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(12-cv-0599)

To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 6; <u>see also</u> Gust Depo. 150:5-23, 162:6-163:2, Ex. 14 (HHonors Terms and Conditions) (attached as Exhibit 9 to Azadian Decl.), & Ex. 15 (Hilton Global Privacy Policy) (attached as Exhibit 10 to Azadian Decl.).)

As for non-HHonors members (including Plaintiff Merritt), Hilton incrediulously contends that it obtained "prior express consent" by consumers merely providing their cell phone numbers at the time of making a reservation or checking into a Hilton-affiliated hotel.[3]   (Hilton's Second Amended Response To Plaintiff Keith Merritt's Special Interrogatories (Set One), Response No. 5 (attached as Exhibit 11 to Azadian Decl.); <u>see also</u> Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 6; Gust Depo., at 117:22-25.)  Hilton contends non-HHonors members (including Plaintiff Merritt) consented to be called at the numbers they provided at the time of making a reservation or checking into a Hilton-affiliated hotel by receiving emails from Hilton confirming the reservation, which state (in tiny font on the bottom of the email), "For a full description of our privacy policy, please click here."  (Gust Depo., at 117:22-122:19, Ex. 8 (Plaintiff Merritt Reservation Confirmation) (attached as Exhibit 12 to Azadian Decl.).)

---

[3] Although this Motion does not address the strong merits of Plaintiffs' claims, it is worth noting that this Court previously held:

> Regarding the booking of reservations, ***Hilton has failed to explain how the mere registration of a cellular telephone number at the time of booking a hotel reservation constitutes prior express consent for the telephone calls at issue here***. "Express consent is '[c]onsent that is clearly and unmistakably stated.'" <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law Dictionary 323 (8th ed. 2004)). Unlike the HHonors Program application, Hilton points to no evidence that in booking a hotel reservation Merritt agreed to Hilton's terms and conditions, including the possibility that contact information might be used to make special offers or promotions by telephone.

<u>Connelly v. Hilton Grant Vacations Co., LLC</u>, 12-cv-599(JLS), 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) (emphasis added).

-10-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

(12-cv-0599)

1

### III.   LEGAL ARGUMENT

2

**A.   Legal Standard**

3       Motions for class certification proceed under Rule 23 of the Federal Rules of Civil

4  Procedure.  The question, however, "is not whether the plaintiff or plaintiffs have stated a cause

5  of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

6  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting Miller v. Mackey Int'l., 452

7  F.2d 424 (5th Cir. 1971)) (internal quotation marks omitted).

8       Rule 23(a) provides four requirements that must be met in any class action:  (1) the class

9  is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

10 common to the class; (3) the claims or defenses of the representative parties are typical of the

11 claims or defenses of the class; and (4) the representative parties will fairly and adequately

12 protect the interests of the class.  Fed. R. Civ. P. 23(a).

13      A proposed class must also satisfy at least one of the three subdivisions of Rule 23(b).

14 Plaintiffs bear the burden of establishing that their case meets Rule 23's requirements.  Doninger

15 v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977); W. States Wholesale, Inc. v.

16 Synthetic Indus., Inc., 206 F.R.D. 271, 274 (C.D. Cal. 2002).  In evaluating this showing, the

17 Court "is bound to take the substantive allegations of the complaint as true."  Blackie v. Barrack,

18 524 F.2d 891, 901 n. 17 (9th Cir. 1975).  It may also "consider evidence which goes to the

19 requirements of Rule 23 even though the evidence may also relate to the underlying merits of the

20 case."  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992).  However, weighing

21 competing evidence is inappropriate at this stage of the litigation.  See Staton v. Boeing Co., 327

22 F.3d 938, 954 (9th Cir. 2003); see also Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 630-31

23 (S.D. Cal. 2010).

24      Rule 23(c)(4) directs that, "[w]hen appropriate, an action may be brought or maintained

25 as a class action with respect to particular issues."  In this regard, "[c]ertifying a class to

26 determine the defendant's liability, while leaving the class members to pursue their individual

27 damages claims, is a common example of partial certification."  Ruiz v. Affinity Logistics Corp.,

28                                        -11-

1    05-cv-2125(JLS), 2009 WL 648973, at *3 (S.D. Cal. Jan. 29, 2009); see also Reeb v. Ohio Dep't

2    of Rehab. & Corr., 435 F.3d 639, 658 (6th Cir. 2006); Amone v. Aveiro, 226 F.R.D. 677, 687 n.

3    8 (D. Haw. 2005); Chiang v. Veneman, 385 F.3d 256, 267 (3d Cir. 2004) ("[C]ourts commonly

4    use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving

5    other elements to individual adjudication—or, perhaps more realistically, settlement.").

6    **B.    All Rule 23(a) Requirements Are Satisfied.**

7         "Rule 23(a) provides four requirements that must be met in any class action:  (1) the class

8    is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

9    common to the class; (3) the claims or defenses of the representative parties are typical of the

10   claims or defenses of the class; and (4) the representative parties will fairly and adequately

11   protect the interests of the class." In re Nat'l W. Life Ins. Deferred Annuities Litig., 268 F.R.D.

12   652, 659 (S.D. Cal. 2010) (citing Fed. R. Civ. P. 23(a)).

13        **1.    Numerosity**

14        Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is

15   impracticable."  "The numerosity requirement requires examination of the specific facts of each

16   case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S.

17   318, 330 (1980).  Courts have found joinder impracticable in cases involving as few as forty

18   class members. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 482 (2d Cir. 1995)

19   (stating that numerosity is "presumed at a level of 40 members."); Ikonen v. Hartz Mountain

20   Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small,

21   classes of 20-40 may or may not be big enough depending on the circumstances of each case,

22   and classes of 40 or more are numerous enough.").  This Court has previously found that

23   "Plaintiffs claim that '[t]he proposed California Class encompasses nearly 2,500 annuity

24   policies'" was sufficient to support a finding of numerosity.  See In re Nat'l W. Life Ins.

25   Deferred Annuities Litig., 268 F.R.D. at 661.

26        Here, discovery has revealed that Hilton has placed ***37,532,395 telemarketing calls*** to

27   members of the Classes during the statutory period of March 9, 2008 to the present.  (Hilton's

28                                          -12-

1    Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One),

2    Response No. 7.)  These calls were placed to at least *6,598,046 persons' cell phones*.  (Hilton's

3    Responses To Plaintiff Brian Connelly's Special Interrogatories (Set Two), Response No. 12.)

4    Indicative that Hilton had no consent to place these annoying calls, during this same period,

5    *1,036,812 people demanded that Hilton remove their cell phone numbers* from Hilton's

6    marketing list!  (Hilton's Responses To Plaintiff Brian Connelly's Special Interrogatories (Set

7    Two), Response No. 17.)  Based on these facts, numerosity is easily satisfied.

8         **2.    Commonality**

9         To demonstrate commonality, the plaintiff must show "questions of law or fact common

10   to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions of fact and law need not be common to

11   satisfy the rule.  The existence of shared legal issues with divergent factual predicates is

12   sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

13   class."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  These requirements are

14   "minimal" and "slight differences in class members' positions" will not prevent a finding of

15   commonality.  Id. at 1020; Blackie, 524 F.2d at 902.

16        In the case at bench, commonality is easily satisfied.  More specifically, the TCPA

17   prohibits the use of an "*automatic telephone dialing system*" to place calls to cell phones

18   without the "*prior express consent*" of the called party.  See 47 U.S.C. § 227(b)(1)(A)(iii); see

19   also Meyer, 707 F.3d at 1043 ("The three elements of a TCPA claim are:  (1) the defendant

20   called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without

21   the recipient's prior express consent.").

22        Here, *a central common issue is whether the Liberation 6000 Dialer meets the statutory*

23   *definition of an "automatic telephone dialing system,"* which is defined as "equipment which

24   has the capacity—(A) to store or produce telephone numbers to be called, using a random or

25   sequential number generator; and (B) to dial such numbers,"  Id. § 227(a)(1).  "When evaluating

26   the issue of whether equipment is an automatic telephone dialing system, the statute's clear

27   language mandates that the focus must be on whether the equipment has the *capacity* 'to store or

28                                              -13-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

(12-cv-0599)

produce telephone numbers to be called, using a random or sequential number generator.'" Connelly v. Hilton Grand Vacations Co., LLC, 12-cv-599(JLS), 2012 WL 2129364, at *5 (S.D. Cal. June 11, 2012) (quoting Satterfield, 569 F.3d at 951) (emphasis in original).  The FCC has further explained that an "automatic telephone dialing system" includes equipment that has the capacity to dial telephone numbers from a provided database or electronic list of numbers.  See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 at 14091, ¶ 131 (2003).

As detailed above in Section II.D.1, Hilton has admitted that it used the exact same equipment to place each of the calls to members of the Classes during the statutory period:  the "Liberation 6000 Dialer."  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 8.)  Hilton's Rule 30(b)(6) witness (John Allen) on the issue of the equipment used to place calls to members of the Classes testified:

> Q. Okay. Now, at the bottom third -- half, it says, "Our call center uses Liberation as a dialer to connect our agents with our guests." Are you aware of any other system that you use other than the Liberation to connect your agents with your guests for outbound telemarketing purposes?
>
> A. Not for telemarketing purposes, no.

(Allen Depo., at 160:14-20.)  Moreover, Hilton only uses a single training manual for its agents regarding use of the Liberation 6000 Dialer.  (Allen Depo., at 146:5-147:18, Ex. 17 (Liberation Training Outbound Agent Guide Book).)  Additionally, Mr. Allen testified that Hilton stores the numbers obtained through the HHonors Program or reservations/check-in into the database of numbers used by the Liberation 6000 Dialer.  (Allen Depo., at 43:8-25.)  Hilton also admits that all calls made through the Liberation 6000 Dialer utilized AT&T as the telephone service provider.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 10.)  Finally, Hilton admits all calls made through the Liberation 6000 Dialer were made through an identified list of 36 telephone numbers.  (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 9.)

-14-

*Whether or not the equipment used in placing calls constitutes an "automatic telephone dialing system" as defined by the TCPA is often a central issue in TCPA litigation*. See e.g., Meyer, 707 F.3d at 1043 ("[Defendant] argues that its dialers do not have the present capacity to store or produce numbers using a random or sequential number generator.  As we explained in Satterfield v. Simon & Schuster, Inc., the clear language of the TCPA 'mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator.' [Citation.] [Defendant's] securities filing shows that [Defendant] uses predictive dialers.  [Defendant] does not dispute that its predictive dialers have the capacity described in the TCPA. This is sufficient to determine that [Defendant] used an automatic telephone dialing system.") (emphasis in original); Satterfield, 569 F.3d at 950-51 (detailed discussion of whether the equipment used by defendant constituted an "automatic telephone dialing system" as defined by the TCPA); Lee v. Stonebridge Life Ins. Co., 11-cv-0043(RS), 2013 WL 542854, at *1 (N.D. Cal. Feb. 12, 2013) (granting certification of class action alleging violations of TCPA based on "common questions suitable for class resolution" including "*whether Defendants transmitted these text messages using an ATDS [automatic telephone dialing system]*") (emphasis added); Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 567 (W.D. Wash. 2012) (granting class certification of TCPA action based on text messages sent to cell phones because "[d]etermining liability on those claims will require resolving numerous common questions of law and fact, including: . . . . *whether [the] system of transmission qualifies as an 'automatic telephone dialing system'* under the TCPA.") (emphasis added).  Here, Hilton disputes that the Liberation 6000 Dialer qualifies as an "automatic telephone dialing system" under the TCPA.  Thus, Plaintiffs have proven the existence of a critical common question — whether the Liberation 6000 Dialer meets the statutory definition of an "automatic telephone dialing system."

*Another central and common issue is whether the two methods of obtaining the class members' phone numbers constitute "prior express consent"* under the TCPA.  As detailed above in Section II.D.2, Hilton contends that it only obtains "prior express consent" for these

-15-

telemarketing calls in two ways (i.e., there are only two forms of supposed "prior express consent"):  (1) by obtaining the phone numbers at the time a class member makes a reservation or checks into a Hilton-affiliated hotel; or (2) through membership in the HHonors Program and the accompanying HHonors Terms and Conditions and the Hilton Global Privacy Policy. (Hilton's Second Amended Response To Plaintiff Brian Connelly's Special Interrogatories (Set One), Response No. 6.)  Indeed, Hilton's Rule 30(b)(6) witness on the issue of "prior express consent" (David Gust) testified:

> Q: So the two ways -- is it your contention that the two ways Hilton believes it obtains consent to call a guest's cell phone is, one, when the guest signs up for the HHonors program, and two, obtaining the phone number through a reservation or check-in?
>
> A. Yes.
>
> . . . .
>
> Q. We asked for all forms of consent. You listed the two ways of consent that you believe Hilton receives from its customers, the two ways being signing up for the HHonors program, and two, obtaining the phone number through reservations or check-in.
>
> A. Yes, those are the two -- those are the two methods.
>
> Q. Of consent?
>
> A. Yes.

(Gust Depo., at 93:12-94:7.)  Additionally, Mr. Allen testified that Hilton stores the numbers obtained through the HHonors Program or reservations/check-in into the database of numbers used by the Liberation 6000 Dialer.  (Allen Depo., at 43:8-25.)

***Numerous Courts have certified TCPA class actions based on similar facts relating to commonality*** on the issue of consent.  See e.g., Manno v. Healthcare Revenue Recovery Grp., LLC, 11-cv-61357(SCOLA), 2013 WL 1283881, at *8 (S.D. Fla. Mar. 26, 2013) (certifying TCPA class action based on calls to cell phones and stating:  "***Although Defendants also contend that the mere act of tendering a phone number to an admissions clerk at the time of medical care constitutes consent per se, this argument, whatever its validity, does not defeat commonality***.  To the contrary, the argument is itself subject to common resolution. ***Whether the provision of a phone number on admissions paperwork equates to express consent is a***

-16-

1   *question common to all class members.*") (emphasis added); <u>Lee</u>, 2013 WL 542854, at *1

2   (granting certification of class action alleging violations of TCPA based on "common questions

3   suitable for class resolution" including "whether Defendants can prove that they had 'prior

4   express consent' to send text messages to Plaintiff and the proposed Class."); <u>Siding &</u>

5   <u>Insulation Co. v. Beachwood Hair Clinic, Inc.</u>, 279 F.R.D. 442, 444 (N.D. Ohio 2012) (granting

6   certification of class action alleging violations of the TCPA and stating:  "The proposed class

7   involves a common legal theory, violations of the TCPA, and common fact questions . . . .

8   Contrary to [defendant's] suggestion, the commonality is not defeated by questions about

9   [defendant's] relationships with individual recipients.  Because  [defendant] faxed recipient

10  numbers on [a] purchased database, *the real question is the source of the numbers in that*

11  *database*.") (emphasis added); <u>Kavu, Inc. v. Omnipak Corp.</u>, 246 F.R.D. 642, 647 (W.D. Wash.

12  2007) (Commonality requirement for certification of class action under TCPA on behalf of all

13  recipients of "unsolicited" facsimile advertisement was satisfied where sender derived all class

14  members' contact information from same database; *common issue existed as to whether*

15  *recipients' inclusion in third-party commercial database constituted express permission to*

16  *receive ads*.) (emphasis added); <u>Mitchem v. Illinois Collection Serv., Inc.</u>, 271 F.R.D. 617, 618

17  (N.D. Ill. 2011) (certifying class action against debt collector for violations of TCPA, which

18  consisted of people whom debt collector had called with an auto-dialer during a four-year period

19  on cellular telephone numbers debt collector had obtained from a medical provider.).  Thus,

20  Plaintiffs have proven the existence of another critical common question — whether the two

21  methods Hilton uses to obtain class members' phone numbers that are used to place calls through

22  the Liberation 6000 Dialer constitute "prior express consent" under the TCPA.

23      **3.**    **Typicality**

24          "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve

25  as guideposts for determining whether under the particular circumstances maintenance of a class

26  action is economical and whether the named plaintiff's claim and the class claims are so

27  interrelated that the interests of the class members will be fairly and adequately protected in their

28                                                                          -17-

1    absence." <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 157 n. 13 (1982).  Typicality under

2    subsection (a)(3) requires that "the claims or defenses of the representative parties are typical of

3    the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality

4    requirement is to assure that the interest of the named representative aligns with the interests of

5    the class."  <u>Hanon</u>, 976 F.2d at 508.  Three factors go into this determination:  (1) "'whether

6    other members have the same or similar injury, [(2)] whether the action is based on conduct

7    which is not unique to the named plaintiffs, and [(3)] whether other class members have been

8    injured by the same course of conduct.'"  <u>Id.</u> (quoting <u>Schwartz v. Harp</u>, 108 F.R.D. 279, 282

9    (C.D. Cal. 1985)).  Although the representative claims need not "be substantially identical" to

10   those of absent class members, they must be "reasonably co-extensive."  <u>Hanlon</u>, 150 F.3d at

11   1020.

12       Here, as individuals who received telemarketing calls from Hilton during the statutory

13   period on their cell phones, Plaintiffs' claims are typical (if not identical) to those of the absent

14   class members.  Indeed, Plaintiffs (and the other members of the Classes) received the calls at

15   issue through Hilton's use of the Liberation 6000 Dialer.  Moreover, as detailed above, Hilton

16   contends that it only obtains "prior express consent" for these telemarketing calls in two ways

17   (i.e., there are only two forms of supposed "prior express consent"):  (1) by obtaining the phone

18   numbers at the time of making a reservation or checking into a Hilton-affiliated hotel; or (2)

19   through membership in the HHonors Program and the accompanying HHonors Terms and

20   Conditions and the Hilton Global Privacy Policy.  In this regard, Plaintiff Connelly is a HHonors

21   member, while Plaintiff Merritt is not a HHonors member but provided his number at the time of

22   checking into a Hilton-affiliated hotel, thus representing both methods used by Hilton.  Finally,

23   Plaintiffs did not consent to receiving the calls at issue.  Thus, Plaintiffs' claims are typical of the

24   claims of the Classes.  See <u>Lo v. Oxnard European Motors, LLC</u>, 11-cv-1009(JLS), 2011 WL

25   6300050, at *3 (S.D. Cal. Dec. 15, 2011) ("Here, the claims of the representative plaintiff

26   allegedly arise out of the same set of facts as those pertaining to the class members.  Like the

27   class members, Plaintiff sent to Defendant a text message requesting to opt out of receiving any

28                                             -18-

further text messages from Defendant.  And like the class members, Plaintiff later received from Defendant a confirmatory text message.  Thus, Plaintiff and the class members assert the same violation of the TCPA arising from the confirmatory text messages sent by Defendant to Plaintiff and the class members.").

**4.    Adequacy**

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class."  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

Here, the interests of the class representatives and the proposed Classes are fully aligned. As stated by Plaintiff Connelly during his deposition:

> I just felt like these calls were a little over the top and very annoying.  And I – in doing some research on-line, I knew that there were a lot of other people that were getting these calls. So that's why I agreed to be a named plaintiff is just to make the calls stop for everybody.

(Deposition Of Plaintiff Brian Connelly ("Connelly Depo."), at 136:6-11 (all referenced deposition testimony from Mr. Connelly's deposition is attached as Exhibit 13 to Azadian Decl.).)  Similarly, Plaintiff Merritt testified:

> Q. What do you seek to recover as a party to this lawsuit?
>
> [Objection]
>
> A. For me, this is really -- it's kind of a principally oriented thing for me, I just -- I don't appreciate these kinds of calls, and, you know, if I had been the only one who got this call, I probably wouldn't have said anything or done anything, and, you know, when I started to see -- when I went on and looked in the volume of everything and then I decided, you know what, I'm going to submit my experience to this law firm and just let them know, I certainly at that time didn't have any idea that I would be sitting down here in New York, you know, doing a deposition of all things. I'm really not looking for anything except for these calls to stop. I mean, that -- and just for the law to be respected.

(Deposition Of Plaintiff Keith Merritt ("Merritt Depo."), at 307:14-308:12 (all referenced deposition testimony from Mr. Allen's deposition is attached as Exhibit 14 to Azadian Decl).)

-19-

1    Simply put, neither Plaintiff has any interests antagonistic to the members of the Classes.  In the

2    interests of furthering this litigation, both Plaintiff Connelly and Plaintiff Merritt completed

3    numerous responses to Hilton's discovery requests and submitted to day-long depositions where

4    they were grilled for hours by Hilton's room-full of attorneys.

5           Likewise, Plaintiffs' counsel has demonstrated that they are highly capable and willing to

6    vigorously, efficiently and expeditiously prosecute this class action.  This is evidenced by the

7    successful Opposition to the Motion to Dismiss or In The Alternative Motion for Summary

8    Judgment filed by Plaintiffs, the discovery propounded by Plaintiffs, the depositions taken by

9    Plaintiffs' counsel, and the manner in which the instant action has been litigated.  Plaintiffs'

10   counsel is also very experienced in TCPA cases and class-action litigation.

11   **C.     Rule 23(b) Is Also Satisfied.**

12          As stated above, a class must meet all of the elements of Rule 23(a) and the elements of

13   at least one subdivision of Rule 23(b).  Although either would be sufficient to grant class

14   certification, Plaintiffs have satisfied both Rule 23(b)(2) and Rule 23(b)(3).

15          **1.     Certification Under Rule 23(b)(2) Is Clearly Appropriate.**

16          Rule 23(b)(2) provides that a class action is appropriate if "the party opposing the class

17   has acted or refused to act on grounds generally applicable to the class, thereby making

18   appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

19   whole."  Fed. R. Civ. P. 23(b)(2).  ***The Ninth Circuit recently affirmed the Southern District's***

20   ***certification of a class action for violations of the TCPA under Rule 23(b)(2)***.  See Meyer, 707

21   F.3d at 1043.  Unlike Rule 23(b)(3), Rule 23(b)(2) does ***not*** require that common issues

22   predominate or that a class action is a superior method for adjudicating the controversy.  See

23   Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998) ("We note that with respect to 23(b)(2) in

24   particular, [defendant's] dogged focus on the factual differences among the class members

25   appears to demonstrate a fundamental misunderstanding of the rule.  Although common issues

26   must predominate for class certification under Rule 23(b)(3), no such requirement exists under

27   23(b)(2).  It is sufficient if class members complain of a pattern or practice that is generally

28                                                        -20-

applicable to the class as a whole.  Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.").

Class certification under Rule 23(b)(2) is appropriate where the primary relief sought is declaratory or injunctive.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1195 (9th Cir. 2001).  "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is 'merely incidental to [the] primary claim for injunctive relief.'"  Id.; see also Probe v. State Teachers' Retirement Sys., 780 F.2d 776, 780 (9th Cir. 1986); Delarosa v. Boiron, Inc., 275 F.R.D. 582, 592 (C.D. Cal. 2011) (finding certification under Rule 23(b)(2) appropriate in action under the California Legal Remedies Act (CLRA) seeking "four types of monetary damages pursuant to the CLRA: (1) actual damages; (2) punitive damages; (3) statutory damages of no less than $1,000 per class member; and (4) statutory damages of $5,000 for each class member who is a senior citizen or disabled person and 'who has suffered substantial physical, emotional, or economic damages.'"); Leyva v. Buley, 125 F.R.D. 512, 518 (E.D. Wash. 1989) (certification under Rule 23(b)(2) appropriate because "[a]lthough the monetary damages element is not *de minimis*, the injunctive relief sought appears to be equally important.").

Here, by placing calls to members of the Classes through use of the Liberation 6000 Dialer without their "prior express consent," Hilton has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. See Fed. R. Civ. P. 23(b)(2).  Indicative of the lack of consent Hilton had to place these annoying calls, during the statutory period, *1,036,812 people demanded that Hilton remove their cell phone numbers* from Hilton's marketing list!  As Plaintiffs' deposition testimony makes clear, the main goal of the lawsuit is to stop these annoying calls.  (See Connelly Depo., at 136:6-11 ("So that's why I agreed to be a named plaintiff is just *to make the calls stop for everybody*.") (emphasis added); see also Merritt Depo., at 307:14-308:12 ("*I'm really not looking for anything except for these calls to stop.  I mean, that -- and just for the law to be respected*.") (emphasis added).)  Critically, Plaintiffs' Complaint from the outset sought:  "An Order issuing an injunction, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining Hilton Grand Vacations from

-21-

1  placing any further Prohibited Calls to members of the Class and complying with the TCPA."

2  (Compl. ¶ 39(b).)  Finally, *the TCPA specifically provides for injunctive relief*.  See 47 U.S.C. §

3  227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a

4  State, bring in an appropriate court of that State--(A) an action based on a violation of this

5  subsection or the regulations prescribed under this subsection to enjoin such violation.").

6  Accordingly, certification under Rule 23(b)(2) is clearly warranted.

7         **2.**    **Plaintiffs Have Also Satisfied Rule 23(b)(3).**

8        Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to

9  class members *predominate* over any questions affecting only individual members, and that a

10  class action is *superior* to other available methods for fairly and efficiently adjudicating the

11  controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

12         **a.**    **Common Questions Predominate Over Any Individual Issues.**

13        "Because no precise test can determine whether common issues predominate, the Court

14  must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy

15  Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006); In re Nat'l W. Life Ins. Deferred Annuities

16  Litig., 268 F.R.D. at 662-63.  This "requires an assessment of the relationship between individual

17  and common issues" which "takes into consideration all factors that militate in favor of, or

18  against, class certification." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946 (9th

19  Cir. 2009).  "Implicit in the satisfaction of the predominance test is the notion that the

20  adjudication of common issues will help achieve judicial economy." Valentino v. Carter-

21  Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996); see also In re Wells Fargo Home Mortgage

22  Overtime Pay Litig., 571 F.3d 953, 958 (9th Cir. 2009) ("Whether judicial economy will be

23  served in a particular case turns on close scrutiny of 'the relationship between the common and

24  individual issues.'") (quoting Hanlon, 150 F.3d at 1022)). This is the "overarching focus" of the

25  Court's inquiry.  Vinole, 571 F.3d at 946 (citing Zinser, 253 F.3d at 1189).

26        "The three elements of a TCPA claim are:  (1) the defendant called a cellular telephone

27  number; (2) using an automatic telephone dialing system; (3) without the recipient's prior

28                                      -22-

1  express consent." Meyer, 707 F.3d at 1043. As detailed in Sections II.D.1-2, Plaintiffs have

2  presented common issues with regard to whether or not the Liberation 6000 dialer constitutes an

3  "automatic telephone dialing system" and whether the two methods used by Hilton to obtain cell

4  phone numbers constitute "prior express consent" under the TCPA. Discovery has already

5  revealed that Hilton is capable of segregating what calls were placed to cell phones compared to

6  landlines. Thus, each element of the case at bench is resolved by common factual and legal

7  issues. Accordingly, these common issues clearly predominate over any discrete individual

8  issues that Hilton may be able to manufacture. See e.g., Lo, 2011 WL 6300050, at *3 ("Here, a

9  ***common issue predominates over any individual issue—namely, whether the transmission and***

10  ***content of confirmatory text messages allegedly sent by Defendant to all class members***

11  ***violates the TCPA***.") (emphasis added); Manno, 2013 WL 1283881, at *12 (certifying TCPA

12  class action based on calls to cell phones and stating: "contrary to Defendants' argument, ***the***

13  ***issue of consent does not predominate over the questions common to the class***. Further, as

14  explained above, the ***Defendants' other consent argument—that class members consented ipso***

15  ***facto during the admissions process—is not an individualized issue defeating predominance***,

16  but is itself a question/defense common to the class as a whole.") (emphasis added); Siding &

17  Insulation Co., 279 F.R.D. at 444 (granting certification of class action alleging violations of the

18  TCPA and stating that predominance was satisfied because "[defendant] faxed recipient numbers

19  on [a] purchased database, the real question is the source of the numbers in that database.")

20  (emphasis added); Kavu, 246 F.R.D. at 647(finding predominance in certifying TCPA class

21  action.); Mitchem, 271 F.R.D. at 618 (finding predominance in certifying TCPA class action.).

22              **b.       A Class Action Is Superior To Over A Million Individual Actions For**

23              **The Exact Same Claims.**

24       Rule 23(b)(3) sets forth four factors to consider when determining whether class

25  treatment is superior. Those factors are: "(A) the class members' interests in individually

26  controlling the prosecution or defense of separate actions; (B) the extent and nature of any

27  litigation concerning the controversy already begun by or against class members; (C) the

28  -23-

1  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

2  and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  This focuses

3  the Court's attention "on the efficiency and economy elements of the class action" in order to

4  ensure that real benefit would be gained by class treatment.  Zinser, 253 F.3d at 1190.

5      Courts have regularly ruled that a class action is a superior vehicle for resolving TCPA

6  disputes.  See Agne, 286 F.R.D. at 571 (finding superiority because "[$500] is not sufficient to

7  compensate the average consumer for the time and effort that would be involved in bringing a

8  small claims action against a national corporation"); Kavu, 246 F.R.D. at 650 (holding that

9  claims under the TCPA are sufficiently small such that they are unlikely to be litigated

10  individually); Bellows v. NCO Fin. Sys., Inc., No. 07-cv-01413(W), 2008 WL 4155361, at *8

11  (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he class action procedure is the

12  superior mechanism for dispute resolution in this matter. The alternative … would be costly and

13  duplicative.").

14      Here, class treatment is superior because many class members are unaware of their rights

15  under the TCPA and over a million consumers have already demanded that Hilton stop calling

16  their cell phones.  Moreover, given the relatively small statutory damages for each class member,

17  individual class members are unlikely to separately retain counsel and prosecute their claims

18  effectively, including retaining expert witnesses on the issue of whether the Liberation 6000

19  Dialer constitutes an "automatic telephone dialing system."  Plaintiffs have also not uncovered

20  any other known pending similar actions against Hilton for violations of the TCPA.  An

21  individual action is highly unlikely to bring about the practice changes and injunctive relief,

22  which is the primary driver of this litigation.  Thus, class treatment is clearly superior compared

23  to an avalanche of individual actions.

### IV.   CONCLUSION

25      Based on the foregoing, Plaintiffs respectfully request an Order:  (i) certifying this action

26  as a class action for injunctive and monetary relief pursuant to Federal Rule of Civil Procedure

27

28                                -24-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   23(b)(2) and 23(b)(3); (ii) appointing Plaintiffs as representatives of the Classes; and (iii)

2   approving The Mathews Law Group as counsel for the Classes.

3

4                                            THE MATHEWS LAW GROUP

5   Dated:  May 10, 2013                     By: /s/ George S. Azadian
6                                            George S. Azadian
                                             Attorney for Plaintiffs Brian Connelly, Keith
7                                            Merritt and the Proposed Classes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      -25-