1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

BRIAN CONNELLY and KEITH
MERRITT, on behalf of themselves
and all others similarly situated,

11

12

Plaintiffs,

13

vs.

14

HILTON GRAND VACATIONS
COMPANY, LLC,

15

16

Defendant.

CASE NO. 12CV599 JLS (MDD)

**ORDER (1) DENYING MOTION
FOR CLASS CERTIFICATION; (2)
DENYING EVIDENTIARY
OBJECTIONS; (3) DENYING
MOTION TO STRIKE**

(ECF No. 36, 44)

17
18
19
20
21
22
23

Presently before the Court is Plaintiffs Brian Connelly and Keith Merritt's ("Plaintiffs") Motion for Class Certification. (ECF No. 36). Also before the Court is Defendant Hilton Grand Vacations Company, LLC's ("HGV") response in opposition, (ECF No. 40), and Plaintiffs' reply in support, (ECF No. 46). A hearing on the motion was held on October 4, 2013. Having considered the parties' arguments and the law, the Court **DENIES** the motion for class certification.

## BACKGROUND

24
25
26
27
28

In this putative class action, Plaintiffs, on behalf of themselves and all parties similarly situated, bring claims against HGV pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq. Plaintiffs allege that HGV used automatic dialing equipment to place unsolicited telemarketing calls to the cell phones of Plaintiffs and class members. According to Plaintiffs, HGV made approximately 37

1   million calls to over six million cell phones during the four-year period covered by the
2   TCPA.  Plaintiffs seek statutory damages on behalf of the proposed class that could
3   total between $18 and $54 billion.

4        HGV is a subsidiary of Hilton Worldwide, Inc. ("Hilton") that develops,
5   manages, markets, and operates a system of exclusive, high-end resort properties.  HGV
6   maintains that it does not make cold-calls, but rather markets directly to individuals,
7   such as Plaintiffs, who voluntarily provided their contact information to Hilton when
8   (1) signing up for Hilton's HHonors loyalty rewards program, or (2) reserving, or
9   checking in to, a room at a Hilton hotel.

10       Plaintiffs filed this suit on March 9, 2012.  (Compl., ECF No. 1).  On June 11,
11  2012, the Court denied HGV's motion to dismiss Plaintiffs' claims, finding that it was
12  premature to consider Plaintiffs' compliance with Rule 23's class certification
13  requirements and that Plaintiffs alleged sufficient facts to state a claim under the TCPA.
14  (ECF No. 17).

15       On May 10, 2013, Plaintiffs filed this motion for class certification, with a
16  hearing originally scheduled for June 28, 2013.  (ECF No. 36).  HGV filed its response
17  in opposition on June 14, 2013, (ECF No. 40), along with a motion to strike certain
18  documents and exhibits contained in the class certification papers, (ECF No. 44).
19  Plaintiffs filed a reply in support on June 21, 2013, (ECF No. 46), along with objections
20  to certain materials submitted in support of HGV's opposition, (ECF No. 47).  The
21  Court reset the motion hearing for August 1, 2013, and then subsequently rescheduled
22  the hearing again for October 4, 2013.

23                          **LEGAL STANDARD**

24       Class certification is governed by Federal Rule of Civil Procedure 23.  Under
25  Rule 23, the party seeking certification bears the burden of showing that each of the
26  four requirements of Rule 23(a) and at least one of the three requirements of Rule 23(b)
27  have been met.

28       Rule 23(a) provides four requirements that must be met in any class action: (1)

the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  As to Rule 23(b), a plaintiff need only show that any one of the three described scenarios is satisfied.  In addition to the Rule 23 requirements, the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable.  *See, e.g.*, *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012).

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.*  The Court must engage in a "rigorous analysis," often requiring some evaluation of the "merits of the plaintiff's underlying claim," before finding that the prerequisites for certification have been satisfied.  *Id.*  "Although some inquiry into the substance of a case may be necessary[,]" however, "it is improper to advance a decision on the merits to the class certification stage."  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (citations and internal quotation marks omitted).

## ANALYSIS

HGV opposes class certification on multiple grounds, arguing that Plaintiffs have failed to (1) set forth an objectively identifiable and ascertainable class, (2) satisfy Rule 23(a)'s commonality and typicality requirements, (3) satisfy Rule 23(b)(3)'s predominance and superiority requirements, or (4) satisfy Rule 23(b)(2)'s requirement that the action be one that primarily seeks injunctive or declaratory relief.  As the Court finds that Rule 23(b)(3)'s predominance requirement is dispositive of Plaintiffs' class certification motion, the Court does not address all of the parties' arguments, but rather focuses its analysis on this key issue.

**1. Rule 23(b)(3)**

A party seeking certification pursuant to Rule 23(b)(3) must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members."[1]   Although somewhat "redolent of the commonality requirement of Rule 23(a)," the predominance inquiry of Rule 23(b)(3) is ultimately "'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In TCPA actions, the predominance inquiry is satisfied only when Plaintiffs "advance a viable theory employing generalized proof to establish liability with respect to the class involved." *Id.*  The elements of a TCPA claim are "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  Although TCPA cases are not "'per se' unsuitable for class resolution," class certification is warranted only when the "unique facts" of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary.  *Gene & Gene*, 541 F.3d at 326.   Thus, predominance in TCPA cases primarily turns on whether a class-based trial on the merits could actually be administered.

HGV argues that the putative class members in this action voluntarily provided their cell phone numbers in a variety of factually different scenarios, such that consent

---

[1] Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to a finding of predominance or superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

must be dealt with on an individualized basis.  According to HGV, the cell phone numbers that it called were obtained from individuals who signed up for the HHonors loyalty rewards program over the phone, online, or by filling out a paper application, as well as from guests that reserved rooms at Hilton hotels online, over the phone, through third parties, or through online or brick-and-mortar travel agencies.  (*See* Resp. in Opp'n 11–16, ECF No. 40).[2]  Thus, HGV contends that a classwide trial on the merits would be untenable and would eventually degenerate into a series of individual trials regarding the "various circumstances unique to each putative class member's interactions with Hilton."  (*Id.* at 26).

Plaintiffs contend that HGV is vastly overstating the differences in the ways in which it obtained the cell phone numbers of Plaintiffs and class members.  Plaintiffs insist that the Court should assign no importance to minute variances, such as whether class members provided a cell phone number when reserving a Hilton hotel room online, or whether they instead provided their phone number in person during the check-in process.  (Reply in Supp. 9, ECF No. 46) ("Such trivial details do not defeat commonality.") Ultimately, Plaintiffs argue, the issue of consent boils down to a single question, applicable to all class members: does providing a cell phone number during reservation or check-in or when signing up for the HHonors loyalty rewards program equate to prior express consent to the telemarketing calls that HGV made?  (*Id.* at 12).

The Court concludes, however, that HGV has set forth a fairly strong argument that the differing circumstances under which putative class members provided their cell phone numbers to Hilton are, at the very least, relevant to a determination of prior express consent.  The context of class members' interactions with Hilton is sufficiently varied to provide dissimilar opportunities for the expression of consent.  For example, class members who provided a cell phone number over the telephone when making a reservation at a Hilton hotel had non-scripted, non-uniform interactions with Hilton.  (*See* Oct. 4, 2013 Hearing Tr. 17, ECF No. 64).  It is likely that each individual received

---

[2] Pin cites to documents utilize the page numbers assigned by CM/ECF.

1    a different amount of information regarding how his cell phone number would be used
2    and there is at least a non-trivial possibility that some class members expressed consent
3    in a manner that was colored by these circumstances.  (*See id.*)  This diversity suggests
4    that the issue of consent should be evaluated individually, rather than on a classwide
5    basis.

6         The cases relied upon by Plaintiffs are distinguishable because they involve
7    defendants that obtained cell phone numbers under uniform circumstances.  In *Manno*
8    *v. Healthcare Revenue Recovery Group, LLC*, the court explicitly found that "[a]ll
9    [class members] went through the same or similar admissions process, during which
10   they provided their phone numbers."  289 F.R.D. 674, 688 (S.D. Fla. 2013). The *Manno*
11   court made clear that defendant's argument that the class members consented "ipso
12   facto" by providing their cell phone numbers was suitable for resolution on a classwide
13   basis and did not present individualized issues defeating predominance.  *Id.*  Similarly,
14   *Lee v. Stonebridge Life Insurance Co.* involved a telemarketer that acquired its dialing
15   list through "automatic processes."  289 F.R.D. 292, 295 (N.D. Cal. 2013).  Although
16   the *Lee* court certified the class, it left open the possibility that the class could be
17   decertified if discovery revealed that the cell phone numbers in question were actually
18   generated through individual submissions.  *Id.*

19        Here, on the contrary, HGV obtained the class members' cell phone numbers
20   "from a variety of sources over a period of time."  *Gene & Gene*, 541 F.3d at 329.
21   HGV's position is not only that the class members consented "ipso facto" by providing
22   a cell phone number; rather, HGV contends that there was consent under the
23   circumstances of "the individualized experience that each guest shared with Hilton."
24   (Oct. 4, 2013 Hearing Tr. 24, ECF No. 64).  HGV notes that the different ways in which
25   it obtained phone numbers from the class members suggest that its "call list is not a list
26   of homogeneously unconsenting recipients," *Vigus v. So. Ill. Riverboat/Casino Cruises,*
27   *Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011), and that express consent should be evaluated
28   on an individualized basis.  Thus, the individualized issues in this suit are at least as

important as the common issues and the predominance requirement is not satisfied. *See, e.g., Gannon v. Network Tel. Servs., Inc.*, No. CV 1209777-RGK (PJWx), 2013 WL 2450199, at *3 (C.D. Cal. Jun. 5, 2013) (holding predominance requirement not satisfied where issue of consent required individual inquiry regarding class members' interactions with defendant).

**2. Rule 23(b)(2)**

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Plaintiffs may seek certification under this provision as an alternative to satisfying the requirements of Rule 23(b)(3). "Although Rule 23(b)(2) classes need not meet the predominance and superiority requirements, 'it is well established that the class claims must be cohesive.'" *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263–64 (3d Cir. 2011) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)). "'Indeed, a (b)(2) class may require more cohesiveness than a (b)(3) class.'" *Id.*

In this suit, each plaintiff is independently entitled to statutory damages under the TCPA of $500 to $1500 per unlawful call. *See* 47 U.S.C. § 227(b)(3)(B). Thus, Plaintiffs' TCPA claims are ineligible for Rule 23(b)(2) certification, regardless of Plaintiffs' parallel request for injunctive relief. *See Dukes*, 131 S. Ct. at 2557 (holding that certification is improper for claims for "individualized relief," including claims that entail an "individualized award of monetary damages.").[3]

**3. Evidentiary Objections and Motion to Strike**

The Court notes that the parties have each filed evidentiary objections to various documents and exhibits submitted along with the moving papers. The Court **DENIES**

---

[3] Plaintiffs cite the Ninth Circuit's recent decision in *Meyer v. Portfolio Recovery Associates, LLC* in support of the proposition that TCPA cases may be certified under Rule 23(b)(2). 707 F.3d 1036, 1043 (9th Cir. 2012). In that case, however, the district court merely granted provisional certification of the class for the purposes of entering a preliminary injunction. Here, it would be improper to certify Plaintiffs' proposed class pursuant to Rule 23(b)(2) because that Plaintiffs' TCPA claims entail individualized requests for monetary relief.

1  both parties' objections and **DENIES** HGV's motion to strike certain exhibits.  (ECF

2  No. 44).  The objections and the motion either lack merit or refer to exhibits that are not

3  pertinent to the Court's consideration of the dispositive issues discussed above.

4  **CONCLUSION**

5    For the reasons stated above, the Court **DENIES** Plaintiffs' motion for class

6  certification, **DENIES** both parties' evidentiary objections, and **DENIES** HGV's

7  motion to strike.

8    **IT IS SO ORDERED.**

9

10  DATED:  October 29, 2013

11              Honorable Janis L. Sammartino

12              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28